In re GREEN et al.
Patent Appeal No. 2683.

Court of Customs and Patent Appeals.
April 22, 1931.

Owen & Owen, of Toledo, Ohio (Malcolm W. Fraser, of Toledo, Ohio, of counsel), for appellants.

T. A. Hostetler, of Washington, D. C., for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the rejection by the examiner of claims 17 and 18 of appellants' application.

Said claims read as follows:

"17. A rust-proofing compound, comprising a granular or powdery substance containing high acid ortho-phosphates of iron.

"18. A rust-proofing compound, comprising a granular or powdery substance containing high acid phosphates of iron and manganese."

The references are:

Emig, 1,263,395, April 23, 1918.

Gravell, 1,428,084, September 5, 1912.

The application relates to a method of making a rust-proofing composition and includes both process and product claims. Certain of the process claims were allowed, but the product claims, being those above quoted, were rejected. The specification discloses that the composition is used by dissolving it in water. The solution is then boiled and articles having iron surfaces are immersed in it while the solution is boiling.

If claim 17 is patentable, it is because it constitutes invention to produce high acid ortho-phosphates of iron in a granular or powdery form.

This claim was rejected upon the Emig reference. In appellants' specification it is stated: " * * * When strong phosphoric acid contacts iron, high acids salts are formed. Weaker acid, or the acid salts, in contact with iron form the lower acid and insoluble salts."

The Solicitor for the Patent Office in his brief contends that: "Claim 17 enumerates only one element—a well-known chemical product resulting from treating iron with phosphoric acid—in a granular or powdery form. It is submitted to be uninventive to powder any substance."

This contention would appear to be well founded. Appellants, in their brief, make the following statement:

"Ordinary commercial phosphoric acid has the formula $H_3PO_4$. It combines readily with iron in at least three ways indicated in the following equations:

"$Fe+2H_3PO_4=Fe(H_2PO_4)_2+2H$. *The product of this reaction is commonly known as dihydrogen ferrous phosphate.*

"$2Fe+2H_3PO_4=2FeHPO_4+4H$. The product of this reaction is monohydrogen ferrous phosphate.

"$3Fe+2H_3PO_4=Fe_3(PO_4)_2+6H$. The product of this reaction is normal ferrous phosphate.

"Each of these phosphates is normally crystalline. However, the dihydrogen phosphate is readily soluble in water, the monohydrogen phosphate is practically insoluble, its solubility being in terms of a small fraction of 1%; and the normal ferrous phosphate is even less soluble than the monohydrogen phosphate.

"In applicant's process iron and acid are mixed together in the proper proportion to form dihydrogen ferrous phosphate. This is the phosphate first formed when phosphoric acid attacks iron, at least when the phosphoric acid is present in sufficient quantity. * * * *" (Italics ours.)

The second formula above quoted describes appellants' product.

Appellants, however, insist that the said ground of rejection thus urged by the Solicitor for the Patent Office cannot be considered upon this appeal because it was not considered or acted upon by the Patent Office tribunals.

934

It is unnecessary for us to pass upon this point, because we are clear that the Emig reference clearly discloses a product of low acid ortho-phosphates of iron, and it is obvious from that disclosure that high acid ortho-phosphates of iron would be produced by reducing the percentage of iron filings employed in the combination with phosphoric acid. The Emig patent states: "My invention relates to a coating material for iron and the like which is strongly adherent, durable and weatherproof and will protect the surface of iron, etc., to which it is applied for a very extended period from the action of the air and other oxidizing influences. In the following specification I have described in detail the preferred ingredients and proportions thereof and also the preferred manner of compounding the ingredients so as to secure the most satisfactory composition for the purpose. It is to be understood, however, that the specific disclosure is for the purpose of exemplification and that my invention in its broader aspect is not limited either to the particular ingredients, proportions or method of compounding specifically described but equivalent materials may be used the proportions and the method of compounding varied without departing from the scope of the invention as set forth in the following claims."

We agree with the Board of Appeals that there would be no invention in omitting the added ingredients disclosed by Emig and using the iron filings and phosphoric acid to produce the product described in claim 17. There is nothing in the record from which we could conclude that it constituted invention to reduce high acid ortho-phosphates of iron to a granular or powdery form.

Claim 18 was rejected upon the Emig reference, and an admission by appellants that it is old to use manganese oxide in a rust-proofing bath. The Solicitor for the Patent Office contends that, "Where an admittedly old bath includes certain ingredients, including liquid or water, it is submitted to be ordinarily obvious that the solid ingredients may be added one at a time, or be all mixed together before being added as a unit to the liquid." This is clearly a correct statement, and we can find no invention in making manganese a part of the composition instead of using it in conjunction with high acid phosphates of iron, but not as a part of the composition.

The decision of the Board of Appeals is affirmed.

Affirmed.